**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TED A. MCCRACKEN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-2187** |
| | : | |
| **JACQUELINE MCCRACKEN BLEI,** | : | |
| ***et al.*,** | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**ROBRENO, J.**                                                   **JANUARY  26, 2022**

This matter comes before the Court by way of a Complaint (ECF No. 2), brought by Plaintiff Ted A. McCracken, proceeding *pro se*.  By Order dated September 7, 2021, the Court previously determined that McCracken was not able to afford to pay the filing fee in this action and granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, and provided that the Complaint was still subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Court has now conducted the required screening.  For the following reasons, McCracken's federal claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as frivolous and for failure to state a claim, and his state law claims will be dismissed for lack of jurisdiction without prejudice to McCracken's right to proceed in the appropriate state court.

**I.      FACTUAL ALLEGATIONS**[1]

McCracken filed this civil rights action pursuant to 42 U.S.C. § 1983 and § 1985 alleging violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments.  (*See* ECF

---

[1]  The facts set forth in this Memorandum are taken from McCracken's Complaint.  (See ECF No. 2.)  Where the Court cites a page number rather than a paragraph number, the Court will adopt the pagination supplied to the Complaint by the CM/ECF docketing system.

No. 2 at 2.)  He also seeks to assert RICO claims and several claims under state law.  (Id. ¶¶ 103-111, 115-131, 143-162.)  McCracken's Complaint is difficult to summarize because it attempts to assert many distinct legal claims, under both federal and state law, arising out of a complicated series of events that, according to McCracken, sound in a broad-based, wide-ranging conspiracy between multiple individuals (with no apparent connection to each other) and several municipal police departments in Pennsylvania designed to deprive McCracken of his "liberty interest in [his] inheritance" from his mother, Eunice McCracken.  (*See generally id.* at 2-5; *see also id.* ¶ 23.)  In essence, McCracken contends that Defendants' alleged conspiracy was so extensive that multiple private individuals conspired with one another to bring multiple police officers from three different municipalities into the alleged conspiracy, and that they worked in concert to design a multifaceted ploy using the Facebook account of a police officer's wife to entrap McCracken in false criminal charges in order to "get him out of the way" so that they could access his mother's assets.  (*Id.* at 2-5; *see also id.* ¶¶ 35-64.)

McCracken names the following individuals as Defendants in this case: (1) Joseph Blei, a police officer with the Abington Township Police Department; (2) Jacqueline McCracken Blei (wife of Defendant Joseph Blei);[2] (3) C.K. Kenneth Weber; (4) Lorna Simons; (5) John Doe, who is allegedly a police officer; (6) Jane Doe, a "Caucasian female" who "accompanied" Defendant John Doe; and (7) Michelle Taylor.[3]  (*Id.* ¶¶ 2-7, 107-09.)  McCracken also names the following additional police officers:  (1) Officer Gershanick with the Upper Moreland Township

---

[2]  Despite the sur name they share, the Complaint does not allege any familial relation between Plaintiff and Defendant Jacqueline McCracken Blei.

[3] Although she is not listed as a Defendant in the caption of the Complaint or in the subsection entitled "Parties", it is clear from Count III that McCracken seeks to bring claims against her as a Defendant.  (ECF No. 2 ¶¶ 107-09.)

Police Department; (2) Officer Torres of the Upper Gwynedd Township Police Department; (3) Officer Moriarty of the Upper Gwynedd Township Police Department; (4) Officer Ramonowitz of the Upper Gwynedd Township Police Department; (5) Patrick Molloy, the Chief of the Abington Township Police Department;[4] and (6) David Duffy, the Chief of the Upper Gwynedd Township Police Department. (*Id.* ¶¶ 8, 10-12, 135, 137-140, 148, 163-68.) Finally, McCracken names three Pennsylvania municipalities as Defendants: (1) Upper Moreland Township; (2) Upper Gwynedd Township; and (3) Abington Township, in addition to the respective police departments for each: (1) Upper Moreland Township Police Department; (2) Upper Gwynedd Township Police Department; and (3) Abington Township Police Department. (*Id.* at 1; *see also id.* ¶¶ 9, 13-16.)

As best as the Court can discern, McCracken alleges that in 2011 while he was away on a "trip to Europe and Africa[,]" McCracken's mother, Eunice McCracken, "signed an agreement giving Power of Attorney" to Defendant Weber and Defendant Simons, two individuals she met at the Gwynedd Square Presbyterian Church. (*Id.* ¶ 25.) Upon returning in 2018, McCracken learned from his mother that she had changed her will. (*Id.* ¶ 26.) Although McCracken alleges that he was previously the sole beneficiary of her will, under the changes his mother made in his absence he was now "only entitled to 33 1/3 %" of her estate with the remaining two-thirds being distributed equally to (1) her sister-in-law, Laura Adams, and (2) the Gwynedd Square Presbyterian Church. (*Id.*) McCracken alleges that in 2018, his mother directed her attorney, Cynthia Dengler, to (1) restore McCracken's 100% share of her estate under the will and (2) to

---

[4] At certain points in the Complaint, McCracken refers to Molloy as "John Doe1" – which appears to be separate and distinct from his references to Defendant "John Doe" who he associates with a specific Pennsylvania license plate number: GVE5173. For consistency, the Court refers to Molloy solely by his sur name to avoid confusion between him (as John Doe1) and Defendant John Doe.

inform Defendant Weber and Defendant Simons that Gwynedd Square Presbyterian Church was no longer a beneficiary under Eunice McCracken's will.  (*Id.* ¶¶ 27-28.)  McCracken asserts that Attorney Dengler informed Defendants Weber and Simons about the changes to the will in early 2019.  (*Id.* ¶ 28.)

Upon learning of this change, McCracken alleges that Defendants Weber and Simons "became enraged" and "sought out" Defendant Molloy, Chief of the Abington Township Police Department, and asked him to "instruct members of his police force to try to induce [McCracken] to commit a crime, so [he could] . . . be arrested and they could take control of Eunice McCracken and her property."[5]  (*Id.* ¶ 29.)  McCracken further asserts that after the changes to the will in 2018, Defendants Weber and Molloy "instructed" Defendant Officer Blei "to have his wife [Defendant] Jacqueline McCracken Blei . . . start soliciting [McCracken] surreptitiously on Face[]book, [by] feigning friendship, [and] trying to arouse sympathy, [and] pity" in order to "induce [McCracken] to become interested in the welfare of her and her children."[6]  (*Id.* ¶ 32.)  According to McCracken, Defendants put this plan in motion so that "as soon as [McCracken] went to check on their welfare, [D]efendant Jacqueline McCracken Blei would file criminal charges to get [McCracken] arrested, [and] incarcerated" so that Defendants

---

[5]  The Complaint alleges that Defendant Weber "was employed as [an] EMS worker" and that he "frequently traveled to Abington" and Abington Hospital and was "acquainted with the police personnel in Abington Township" as a result.  (*Id.* ¶ 30.)  McCracken contends that based on this fact, "it can be assumed" that Weber approached Molloy in 2011 – at the time the original Power of Attorney was signed – to discuss how Weber could "capitalize on his opportunity."  (*Id.*)

[6]  McCracken alleges that that Defendant Blei was hired as a police officer in Abington Township by Defendant Molloy in 2014 "not because of his excellent qualifications, but, rather because his wife's maiden name was McCracken, so specifically to compliment the conspiracy to take control, institutionalize the elderly Eunice McCracken and steal the assets."  (*Id.* ¶ 31.)

Weber and Simons could then "move to institutionalize [McCracken's] mother and take/embezzle all [her] assets." (*Id.*; *see also id.* ¶¶ 58, 63.)

McCracken's Complaint also sets forth a number of details with respect to Facebook posts made by Defendant McCracken Blei and information McCracken learned about her and her children through her Facebook page and pictures she posted on the social media site. (*Id.* ¶¶ 37-46.) McCracken contends that based on what he learned from Facebook, "suspicions arose" that either Defendant McCracken Blei and her children "were being neglected, [and] abused" or that she "was mispresenting the facts and actively inducing/inciting [McCracken] to investigate [the situation] further by stopping by her residence." (*Id.* ¶ 47.) McCracken alleges that he and Defendant McCracken Blei "were exchanging texts in a conversation at approximately 11pm on or about February 27[, 2019]" before she signed off. (*Id.* ¶ 48.) McCracken admits that he "went to her house at 9:30 am" the next morning, knocked on the door, and introduced himself after she answered. (*Id.* ¶ 49.) When Defendant McCracken Blei asked how McCracken obtained her address, McCracken informed her that he located her address via "anywho.com, internet white pages." (*Id.* ¶ 60.)

On or about May 8, 2019, McCracken was arrested by Upper Gwynedd Township Police Officers Townsend and Torres,[7] who transferred custody of him over to Defendant Officer Gershanick of the Upper Moreland Township Police Department, on charges of stalking, harassment, unsworn falsification to authorities, and two counts of making false reports of child abuse arising out of his interaction with Defendant McCracken Blei and two letters he sent to Montgomery County Child Protective Services. (*Id.* ¶ 69.) McCracken admits that he pled guilty to one count of making a false report of child abuse and was sentenced to one year of

---

[7] Officer Townsend is not named as a Defendant in this action.

probation, and that his remaining charges were dismissed.  (*Id.* ¶ 70.)  A review of public records reveals that McCracken entered a negotiated guilty plea on or about January 29, 2020, and a condition of his probation prohibited him from having any contact with the victims.  *See Commonwealth v. McCracken*, CP-46-CR-0004080-2019, (C.P. Montgomery County).  It is McCracken's contention that Defendant Gershanick talked to Defendants Blei and Molloy of the Abington Township Police Department and learned that Defendant Weber "was looking to get [McCracken] out of the way" by "stack[ing] bogus criminal charges/arrest[ing]/incarcerat[ing]" McCracken so that "they could get $200,000.00 in assets" which supposed to be McCracken's inheritance.  (*Id.* ¶ 72.)  McCracken further claims that Gershanick "stacked the charges" in order to ensure that McCracken had a high bail, initially set at $25,000, causing McCracken to remain incarcerated for two months because he was unable to make bail.[8]  (*Id.* ¶¶ 72-73.)  Based on these allegations, McCracken seeks compensatory damages in the amount of $1 million and punitive damages in the amount of $9 million  (*Id.* ¶¶ 49-52.)

## II.    STANDARD OF REVIEW

The Court previously granted McCracken leave to proceed *in forma pauperis* because it appeared that he was incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

---

[8]  In June of 2019 McCracken's bail was reduced and he was released on his own recognizance. (*Id.* ¶ 73.)  The remainder of McCracken's Complaint details a series of events that occurred with respect to Eunice McCracken's hospitalization and admittance to a rehabilitation facility while McCracken was incarcerated, and McCracken's attempts to learn of his mother's whereabouts and communicate with her and visit her after his release.  (*See generally id.* ¶¶ 74-97.)

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Moreover, 28 U.S.C. § 1915(e)(2)(B)(i) requires the Court to dismiss the Complaint if it is frivolous. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). [9]

In assessing whether a Complaint states a claim, "[a]t this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As McCracken is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[9] Though the Prison Litigation Reform Act amended section 1915, "the provisions of § 1915(e) apply to all *in forma pauperis* complaints, not simply those filed by prisoners." *Atamian v. Burns*, 236 F. App'x 753, 755 (3d Cir. 2007); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 n.19 (3d Cir. 2002) ("non-prisoner indigent plaintiffs" are within the scope of 1915(e)(2)).

## III.    DISCUSSION

As set forth in the Complaint, McCracken brings this "civil rights action pursuant to [42] U.S.C. [§] 1983, [and] [42] U.S.C. [§] 1985" for violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments, including his right to free association, due process, equal protection under the law, and to be free from cruel and unusual punishment.[10]   (*See* ECF No. 2 at 2.)   The Court addresses the plausibility of McCracken's claims under both § 1983 and § 1985 in turn.

### A.    McCracken's Claims Under § 1983

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

---

[10]  McCracken is the only named Plaintiff in this action, but it remains unclear from the Complaint whether McCracken seeks to raise these claims solely on his own behalf, on behalf of his mother, or both.  To the extent McCracken seeks to raise any claims on behalf of his mother, he is prohibited from doing so.  A *pro se* litigant who is not an attorney may not seek to appear on behalf of or represent another party. Accordingly, because McCracken is appearing *pro se* and is not an attorney, he may not seek to appear on behalf of his mother.  *See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991).

Therefore, the Court will dismiss Counts II and III of the Complaint (*see* ECF No. 2 ¶¶ 103-108) without prejudice for lack of standing as it appears these Counts raise claims against Defendant Simons and Defendant Taylor for actions they took with respect to Eunice McCracken.  Throughout the remainder of this Memorandum, the Court's analysis focuses on all remaining claims as though they are brought solely on McCracken's own behalf.

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.    Claims Against Defendants Weber, Simons, McCracken Blei and Taylor

McCracken seeks to assert § 1983 claims for violations of his constitutional rights against Defendants Weber, Simons, McCracken Blei, and Taylor.  Whether a defendant is acting under color of state law — *i.e.*, whether the defendant is a state actor — depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  Pursuant to § 1983, action under color of state law requires that the one liable under that statute have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011).  However, "purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994).  "To answer [the state action] question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Throughout the Complaint, McCracken repeatedly refers to Defendants Weber, Simons, and McCracken Blei as private persons and concedes that these individuals are not state actors.

(*See, e.g.*, ECF No. 2 at 2 ("In 2011, two (2) **private persons** (KENNETH WEBER and LORNA SIMONS) met at church"); *id.* at 22 ("COUNT 1 DEPRIVATION OF RIGHTS BY **PRIVATE PERSON** ACTING UNDER COLOR OF STATE LAW JACQUELINE . . . (McCRACKEN) BLEI"); *id.* ¶ 99 ("Defendant JACQUELINE MARIE (McCRACKEN) BLEI is **not a state official**."); *id.* at 26 ("COUNT V **PRIVATE PERSON** ACTING UNDER COLOR OF STATE LAW" when referring to claim against Defendant Weber); *id.* ¶ 113 ("Defendant . . . KENNETH WEBER is **not a state official**."); *id.* ¶ 168 (". . . the two (2) **private persons** (WEBER/SIMONS)")(emphasis added). McCracken also alleges that Defendant Taylor is the Administrator at Gwynedd Rehabilitation and Healthcare.  (*Id.* ¶ 146.)  Thus, it is clear from the face of McCracken's Complaint that these Defendants are private citizens and they cannot be held liable under § 1983.  *See Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) ("Significantly, [Section] 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful.") (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)(internal quotations omitted); *see also Massey v. Crady*, Civ. A. No. 17-241, 2018 WL 4328002, at *6 (W.D. Pa. Aug. 8, 2018) ("Private citizens ... are not state actors, and therefore ... any § 1983 claims against [them] should be dismissed.").

Seeming to recognize the fact that these Defendants are private citizens and do not qualify as state actors for purposes of § 1983, McCracken asserts that these individuals conspired with a number of state actors, specifically several police officers, in an attempt to nudge his claims from the possible to the plausible.  *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not

nudged their claims across the line from conceivable to plausible, their complaint must be

dismissed.").  In general, "private individuals can act under color of state law for purposes of §

1983 when they corruptly conspire with a state actor."  *See Adams v. Cty. of Erie, Pa.*, 558 F.

App'x 199, 203 (3d Cir. 2014) (internal quotations omitted).  However, to plausibly allege such a

conspiracy, a plaintiff must provide factual allegations supporting an agreement and concerted

action rather than relying on labels and conclusions.  *Capogrosso v. The Supreme Court of N.J.*,

588 F.3d 180, 184-85 (3d Cir. 2009).

        None of the factual allegations in McCracken's Complaint support a plausible basis for a

conspiracy or joint action among any of these Defendants sufficient to render them state actors.

McCracken's allegations about the existence of this conspiracy either rely on legal conclusions

and generalized statements about what constitutes a conspiracy or they are vague, undeveloped,

conclusory allegations that are insufficient to plausibly allege state action.  While the Court

generally must accept the allegations of a complaint as true for screening purposes, the Court can

properly  "pierce the veil of the complaint's factual allegations and dismiss those claims whose

factual contentions are clearly baseless." *See Neitzke*, 490 U.S. at 327.  McCracken factual

allegations regarding this broad-based, wide ranging conspiracy spanning a period of eight years

involving seemingly unconnected individuals from across at least three municipalities in

Pennsylvania are wholly incredible,[11] and the Court need not credit these baseless allegations.

---

[11]  The incredibility of McCracken's conspiracy is reflected in the fact that several of his
allegations are wholly inconsistent with others and defy common sense.  For example, with
respect to the origins and timing of this alleged conspiracy, McCracken alleges that Defendant
Weber and Defendant Simons initiated this conspiracy against him in 2011 when the Power of
Attorney for his mother was first signed – a time during which McCracken was not even in the
country.  Although McCracken alleges that the active portion of the conspiracy did not occur
until Defendants Weber and Simons learned that his mother's will had been changed to restore
him as the sole beneficiary in early 2019, he simultaneously asserts that Defendant Weber
approached Defendant Molloy in 2011 when the Power of Attorney was signed – approximately

Accordingly, the Court concludes that McCracken has failed to sufficient allege a plausible conspiracy sufficient to render Defendants Weber, Simons, or McCracken Blei state actors under § 1983.

To the extent McCracken also contends that Defendant McCracken Blei (or Defendants Weber or Simons for that matter) should be considered a state actor because of her involvement in McCracken's subsequent criminal charges, any such allegations are insufficient to render these Defendants state actors.  "Complaining in person to the police or filing a civilian criminal complaint are not acts of the State; they are acts that anyone can do.  Filing a report or a civilian complaint does not transform a private citizen into a State actor."  *Sous v. Timpone*, Civ. A. No. 15-7972, 2016 WL 2625325, at *4 (D.N.J. May 9, 2016) (citing *Boyce v. Eggers*, 513 F. Supp. 2d 139, 144-45 (D.N.J. 2007)).  Participation in the related police investigation does not render a private person a state actor for purposes of § 1983.  *See Baack v. Rodgers*, Civ. A. No. 14-875, 2014 WL 4632380, at *1, 3 (E.D. Pa. Sept. 17, 2014) (rejecting § 1983 false arrest claim against a hospital and two of its employees who filed a police report regarding plaintiff's conduct because "reporting suspicious conduct to the police — or answering police questions about that conduct — without more, does not transform the Hospital Defendants into state actors" (citations omitted)).  This remains true even where private citizens are alleged to have acted under false pretenses with respect to those criminal charges as McCracken alleges here.  *See, e.g.*, *Collins v. Christie*, Civ. A. No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to

---

eight years earlier – in order to discuss how Weber could "capitalize" on this opportunity. Similarly, while the alleged Facebook "entrapment" by Defendant McCracken Blei allegedly took place in approximately 2019, McCracken contends that her husband Defendant Blei was hired five years earlier – in 2014 – solely because of her maiden name and the ability to further the conspiracy.

state a claim under § 1983."); *O'Neil v. Beck*, Civ. A. No. 04-2825, 2005 WL 2030319, at *2

(M.D. Pa. Aug. 4, 2005) (concluding that allegations that a private citizen filed a false police

report and wanted to see the plaintiff arrested are "simply insufficient" to establish that the

private citizen is a state actor for purposes of a claim brought pursuant to section 1983).

Accordingly, because Defendants Weber, Simons, McCracken Blei, and Taylor are not state

actors, McCracken's claims against them under § 1983 must be dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii) for failure to state a claim.  As it appears that any attempt to amend his

claims against these Defendants would be futile, the Court will dismiss McCracken's claims

against them with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d

Cir. 2002) (stating that leave to amend claims dismissed on screening should be generally be

granted "unless amendment would be inequitable or futile.")

### 2.    Claims Against Various Police Departments

McCracken names the following police departments as Defendants in this action: (1) the

Upper Moreland Township Police Department; (2) the Upper Gwynedd Police Department; and

(3) the Abington Township Police Department.  However, McCracken's claims against the

police departments are not plausible.  Following the decision in *Monell v. Dept. of Social Servs.*,

436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local

government and, as such, is merely a vehicle through which the municipality fulfills its policing

functions.  *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).

Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit

of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3

(3d Cir. 2005) (per curiam) (stating that police department is not a proper defendant in an action

pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v.*

*Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, Civ. A. No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016).  Therefore, neither the Upper Moreland Township Police Department, the Upper Gwynedd Township Police Department, nor the Abington Township Police Department are proper defendants in this case under §1983 and all claims against these Departments must be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).  These claims will be dismissed with prejudice as any attempt to amend would be futile.  *Grayson*, 293 F.3d at 108, 110 .

### 3.    Claims Against the Municipalities

McCracken also seeks to bring § 1983 claims against Upper Moreland Township, Abington Township, and Upper Gwynedd Township.  (*See* ECF No. 2 ¶¶ 9, 13, 15.)  To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish

14

that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Counts VIII, IX, X, and XI essentially seek to bring *Monell* claims against Upper Moreland Township, Abington Township, and Upper Gwynedd Township. (*See* ECF No. 2 ¶¶ 132-142.) McCracken has failed to allege a plausible *Monell* claim against any of the three municipalities named in his action. In short, McCracken's allegations: (1) simply paraphrase and reiterate the standard for municipal liability; (2) fail to set forth a specific policy or custom of any municipality but instead assert that certain policy makers directed the creation of this broad-based conspiracy or sought assistance in completing the conspiracy; or (3) allege a failure to adequately train police officers on various aspects of Pennsylvania law including defrauding the elderly which do not amount to a violation of McCracken's constitutional rights. Accordingly, the Court will dismiss McCracken's claims against the municipalities with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state without leave to amend as any attempt to do so would be futile.[12]

---

[12] McCracken seeks to sue all Defendants in both their individual and official capacities. Claims against police officers in their official capacity are, in essence, claims against the employing municipal entity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690, n.55). For the same reason that his claims against the municipalities fail here, McCracken's official capacity claims are also not plausible and will be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B).

### 4.    McCracken's Remaining Claims are Barred Under *Heck*

McCracken appears to assert claims for false arrest, false imprisonment, and malicious prosecution.  (*See* ECF No. 2 at 2; *see id.* ¶¶ 133, 135.)  "[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

McCracken repeatedly asserts that this conspiracy resulted in his false arrest, false imprisonment, and malicious prosecution.  However, the Complaint itself and public records make clear that McCracken was later criminally charged in state court with a number of offenses arising from the events he asserts were part of this conspiracy and that he plead guilty in state court.  It is also clear that his guilty plea remains intact and has not been invalidated.  *See Commonwealth v. McCracken*, CP-46-CR-0004080-2019, (C.P. Montgomery County).  *Heck* is applicable to convictions based on guilty pleas.  *See Gilles v. Davis*, 427 F.3d 197, 209 n.8 (3d Cir. 2005) ("[U]nder *Heck,* both a guilty plea and an ARD are sufficient to bar a subsequent § 1983 claim.").  Accordingly, McCracken's civil rights claims for false arrest, false

imprisonment,[13] and malicious prosecution – which seek to challenge the validity of his intact guilty plea and conviction – are not cognizable in a civil rights action at this time and must be dismissed.[14]

### B.   McCracken's Claims Under § 1985

McCracken asserts that he is bringing claims pursuant to § 1985.  (*See* ECF No. 2 at 2); (*see id.* ¶¶ 105, 108, 118, 120, 128-29, 133, 142, 157, 171-72, 177).  42 U.S.C. § 1985(3) creates a cause of action against persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ."  42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997).  Significantly, "'[t]he [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835

---

[13] It appears McCracken was arrested pursuant to a warrant in connection with charges filed against him.  Accordingly, his false arrest and false imprisonment claims are more akin to malicious prosecution claims.

[14] Even if Heck is not applicable here, McCracken has not adequately alleged that probable cause was lacking for his prosecution since his allegations on this point are predicated on the vast conspiracy that this Court has already concluded lacked a basis in fact as set forth above.

(1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Moreover, a plaintiff must

allege specific facts to sustain a § 1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere
> conclusory allegations of deprivations of constitutional rights protected
> under § 1985(3).  A conspiracy claim based upon § 1985(3) requires a clear
> showing of invidious, purposeful and intentional discrimination between
> classes or individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972). "An allegation of conspiracy is

insufficient to sustain a cause of action under [section 1985]; it is not enough to use the term

conspiracy without setting forth supporting facts that tend to show an unlawful agreement."

*Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (internal quotation marks and citation

omitted) (alteration in original). "[T]o properly plead an unconstitutional conspiracy, a plaintiff

must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining &*

*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of

conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see, e.g.,*

*Farrar v. McNesby*, 639 F. App'x 903, 906 (3d Cir. 2016) (affirming dismissal of a section

1985(3) claim where the plaintiff "failed to set forth any facts that would allow one to infer that

the Defendants entered into an agreement for the purpose of targeting her protected rights.");

*Kornafel v. Green*, Civ. A. No. 20-4687, 2020 WL 6118786, at *3 (E.D. Pa. Oct. 15, 2020)

("With near unanimity, the courts have rejected complaints containing mere conclusory

allegations of deprivations of constitutional rights protected under § 1985(3).") (citation

omitted).

McCracken's Complaint does not allege a plausible claim under § 1985.  Even if the

Court were to credit McCracken's conclusory allegations that multiple Defendants conspired

together to get him arrested and incarcerated in order to have access to his mother's assets,

McCracken fails to sufficiently allege that the conspiracy against him was based on his race or membership in a class.  In fact, McCracken's Complaint is completely silent with respect to his own race.  Accordingly, any claims brought pursuant to § 1985 are implausible and will be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).  *Cf. Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 592 (D.N.J. 2003), *aff'd*, 137 F. App'x 482 (3d Cir. 2005) (dismissing § 1985 conspiracy claim for failure to state a claim where plaintiff, an indigent, African-American woman, asserted that a medical center and several doctors conspired to deprive her of her Medicaid benefits because she did "not provide a factual basis for her claims that the alleged conspiracy was motivated by 'racial  . . . or otherwise class based' animus.").  As any attempt to amend this claim would be futile, McCracken will not be granted leave to amend on this issue.

### C.    RICO Claims

The Racketeer Influenced and Corrupt Organizations Act ("RICO" ) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)).  To state a civil RICO claim, a plaintiff must plausibly allege the following elements: " (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.* (internal quotations omitted).  "In order to have standing to litigate a civil RICO claim, a plaintiff must show that [he] suffered an injury to [his] business or property and that the injury was proximately caused

by the defendant's racketeering activities." *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014) (*per curiam*).

To the extent McCracken is again raising RICO claims, they rest entirely on conclusory references to racketeering, which may not be credited as true on their own.  His allegations of racketeering are wholly unsupported by any factual allegations supporting a pattern of racketeering activity here.  Accordingly, McCracken has failed to state a plausible RICO claim.

### D.      Claims Under the Pennsylvania Constitution

McCracken also appears to bring claims under the Pennsylvania Constitution.  (*See* ECF No. 2 ¶¶ 102, 120, 129, 172.)  However, as there is no private right of action for damages under the Pennsylvania Constitution, these claims must be dismissed with prejudice as legally frivolous pursuant to § 1915(e)(2)(B)(i).  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").  McCracken will not be granted leave to amend these claims as any amendment would be futile.

### F.      State Law Claims

McCracken also alleges a number of claims arising under Pennsylvania state law.  The Court declines to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367, having dismissed all of McCracken's federal claims.  Accordingly, the only independent basis for jurisdiction over any state law claims is 28 U.S.C. § 1332, which provides that a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens

of different States."  28 U.S.C. § 1332(a).  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he or she is domiciled, meaning the state where he or she is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "The burden of establishing federal jurisdiction rests with the party asserting its existence."  *Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

McCracken does not adequately allege the citizenship of any of the parties to this action.  With respect to both his own citizenship and the citizenship of the individual Defendants – McCracken Blei, Blei, Molloy, Weber, Simons, Taylor, Gershanick, Torres, Moriarty, Ramonowitz, and Duffy – McCracken does not set forth the state where any of these parties are domiciled as is required for diversity jurisdiction.[15]  Accordingly, McCracken has failed to meet his burden of demonstrating that this Court has subject matter jurisdiction over any state law

---

[15] The Court notes that McCracken provided a Pennsylvania address as his address of record, and alleges in the Complaint that "at all times mentioned herein" he "reside[d] . . . [in] North Wales, PA[.]"  (ECF No. 2 ¶ 1.)  With respect to several individual Defendants (specifically McCracken Blei, Blei, Weber, and Simons), McCracken alleges that each of these individuals "resides" in a Pennsylvania municipality including Willow Grove, North Wales, and Lansdale.  None of McCracken's allegations are sufficient allegations from which the Court can determine the citizenship of these parties for purposes of diversity.  Additionally, even if the Court accepted these allegations as sufficient for purposes of citizenship, it appears that McCracken, McCracken Blei, Blei, Weber, and Simons would all be citizens of Pennsylvania.  In that instance, complete diversity is lacking and the Court cannot maintain diversity jurisdiction over McCracken's state law claims.

claims he may be raising.  *See Lincoln Ben. Life Co.*, 800 F.3d at 105.  Thus, all state law claims will be dismissed for lack of subject matter jurisdiction without prejudice to McCracken's right to assert those claims in an appropriate state court.

## IV.     CONCLUSION

For the foregoing reasons, the Court will, dismiss McCracken's § 1983 claim predicated on his alleged malicious prosecution as barred by *Heck.* McCracken may not amend this portion of his § 1983 claim since any such claim is currently subject to the *Heck* bar and must be brought in a new civil action if that bar is ever removed.  McCracken's remaining federal claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii).  McCracken will not be granted leave to amend because amendment of these remaining federal claims would be futile.[16] *See Grayson*, 293 F.3d at 114.  McCracken's state law claims will be dismissed for lack of subject matter jurisdiction without prejudice to McCracken's right to raise those claims in an appropriate state court.  An appropriate Order follows.

BY THE COURT:


*/s/ Eduardo C. Robreno*
**EDUARDO C. ROBRENO, J.**

---

[16] The "kitchen-sink" nature of McCracken's Complaint makes it difficult to accurately discern the full scope of his claims in this action.  To the extent the Complaint could be liberally construed to raise any additional federal constitutional claims not specifically addressed above, the Court has concluded that those claims are either frivolous or inadequately pled and do not warrant further discussion.